LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: marston1@pacbell.net
*Attorney for Plaintiffs*, Chemehuevi Indian Tribe and Chicken Ranch Rancheria

DAVID B. DEHNERT
California State Bar No. 214243
DEHNERT LAW, PC
475 Washington Blvd.
Marina Del Rey, California 90292
Telephone: 310-822-3222
Facsimile: 310-577-5277
Email: david@dehnertlaw.com
*Attorney for Plaintiff*, Blue Lake Rancheria

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, BLUE LAKE RANCHERIA, and, CHEMEHUEVI INDIAN TRIBE,<br><br>Plaintiffs,<br>v.<br><br>EDMUND G. BROWN, JR., Governor of California, and STATE OF CALIFORNIA,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>[25 U.S.C. § 2710(d)(7)(A)(i)] |

# INTRODUCTION

This is an action brought by three federally recognized Indian tribes (collectively, the "Tribes") against the Governor of the State of California ("Governor") and the State of California ("State"). The Tribes seek an order from the Court declaring that the Governor and State (collectively, the "State") violated the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA") by not engaging in "good faith" negotiations with the Tribes to conclude a Tribal-State class III gaming compact. Specifically, the State did not engage in good faith negotiations with the Tribes by demanding that the Tribes negotiate over subjects that are not within the scope of subjects the Tribes have an obligation to negotiate over under the IGRA.

The Tribes also seek an order from the Court: (1) declaring that the Tribes have no obligation to negotiate with the State over the subjects they assert are improper subjects of negotiation; (2) directing the State and the Tribes to resume compact negotiations and conclude a replacement compact within 60 days of the date of the Court's order, pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii).

# JURISDICTION

1. This Court's jurisdiction over the Tribes' claims is based upon the following:

   (a) 28 U.S.C § 1331, in that this action arises under the Constitution and laws of the United States, specifically, the IGRA;

   (b) 28 U.S.C. § 1362, in that the Tribes are federally recognized Indian tribes asserting that the State's actions violate the Constitution and laws of the United States, including federal common law;

   (c) 25 U.S.C. § 2710(d)(7)(A)(i), in that this is an action brought by federally recognized Indian tribes against the State alleging that the State has not conducted negotiations with the Tribes to conclude a Tribal-State Compact in good faith; and

(d) The State has waived its sovereign immunity with regard to disputes between the State and the Tribes on the issue of whether the State engaged in good faith compact negotiations pursuant to California Government Code § 98005.

## VENUE

2. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that:

(a) The Defendants reside within this District; and

(b) A substantial part of the events or omissions giving rise to the Tribes' claims occurred in this District.

## CASE OR CONTROVERSY

3. An actual case or controversy exists between the Tribes and the State, in that the Tribes assert that the State has demanded that the Tribes negotiate over certain subjects, set forth in Paragraph 22, below, that are not proper subjects of negotiation under the IGRA, specifically 25 U.S.C. § 2710(d)(3)(C) ("Section 2710(d)(3)(C)"), while the State asserts that the subjects are proper subjects of negotiation under Section 2710(d)(3)(C).

In addition, the Tribes assert that, because the subjects are not encompassed by the subjects set forth in Section 2710(d)(3)(C), they have no obligation to negotiate with the State over those subjects, while the State asserts that the Tribes are obligated to negotiate over those subjects.

## PARTIES

4. Plaintiff, Blue Lake Rancheria ("Blue Lake"), is a federally recognized Indian tribe, organized under the provisions of the Indian Reorganization Act, 25 U.S.C. § 476, under a written Constitution, which has been approved by the Secretary of the Interior ("Secretary") and which designates the Blue Lake Business Council as the governing body of Blue Lake. Blue Lake is the beneficial owner of the Blue Lake Rancheria ("Indian Reservation"), which

consists of approximately 26 acres of trust and fee lands located within the exterior boundaries of the Indian Reservation in Humboldt County, California.

5. Plaintiff, Chicken Ranch Rancheria of Me-Wuk Indians ("Chicken Ranch"), is a federally recognized Indian tribe organized under a written Constitution, which designates the Chicken Ranch Tribal Council as the governing body of Chicken Ranch. Chicken Ranch is the beneficial owner of the Chicken Ranch Rancheria or reservation ("Rancheria"), which consists of approximately 40 acres of trust and fee lands located within the exterior boundaries of the Rancheria in Tuolumne County, California.

6. Plaintiff, Chemehuevi Indian Tribe ("Chemehuevi Tribe"), is a federally recognized Indian tribe, organized under the provisions of the Indian Reorganization Act, 25 U.S.C. § 476, under a written Constitution, which has been approved by the Secretary and which designates the Chemehuevi Tribal Council as the governing body of the Chemehuevi Tribe. The Chemehuevi Tribe is the beneficial owner of the Chemehuevi Indian Reservation ("Reservation") which consists of approximately 32,000 acers of trust and fee lands located within the boundaries of the Reservation in San Bernardino County, California.

7. Defendant Edmund G. Brown, Jr. ("Governor Brown" or "Governor") is the duly-elected Governor and chief executive officer of the State and is sued in that capacity.

8. Defendant the State of California is a quasi-sovereign governmental entity and a state of the United States.

**GENERAL ALLEGATIONS PERTAINING TO THE IGRA**

9. In 1988, Congress enacted the IGRA to create a framework for Indian tribes, states, and the federal government to regulate on-reservation tribal gaming.

10. The IGRA divides Indian gaming into three classes, with different regulatory requirements for each class. Class I gaming consists of traditional tribal games for prizes of minimal value connected with tribal ceremonies or

celebrations. 25 U.S.C. § 2703(6). Class I gaming is within the exclusive regulatory jurisdiction of the tribes. Class II gaming consists of bingo, "whether or not electronic, computer, or other technological aids are used in connection therewith," including "pull tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo." 25 U.S.C. § 2703(7)(A)(i). Also included in class II gaming are non-banked card games either explicitly authorized by state law or not prohibited by state law and played in conformity with state regulations regarding hours of play and limits on wagers and pot sizes. 25 U.S.C. § 2703(7)(A)(i)-(ii) and (7)(B). Class III gaming is defined as "all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8). Class II and class III gaming fall within the regulatory jurisdiction of the tribes and the National Indian Gaming Commission ("NIGC"), a federal regulatory agency created under the IGRA.

11. The most lucrative form of gaming is class III gaming. It includes the games played in a typical casino in Las Vegas, such as slot machines, craps, roulette, and banked card games, like blackjack. *See* 25 U.S.C. § 2703(8). Under Section § 2710(d)(1) of the IGRA, in order for a tribe to be authorized to conduct class III gaming: (1) the tribe must have adopted a tribal ordinance that authorizes the playing of the class III games and the ordinance must have been approved by the Chairman of the NIGC; (2) the state in which the class III gaming will be conducted must "permit" such gaming for any purpose by any person, organization, or entity; and (3) the class III gaming must be conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the state, pursuant to 25 U.S.C. § 2710(d)(3).

12. Section 2710(d)(3) sets forth the procedures that a tribe and a state must follow in order to negotiate and enter into a compact. Section 2710(d)(3)(A) provides that, upon the request of a tribe, a state shall negotiate in "good faith" with the tribe to enter into a compact. If the state fails to bargain in good faith, the tribe can sue the state in federal court. 25 U.S.C. § 2710(d)(7)(A)(i). If the court

finds that the state failed to negotiate in good faith, the district court "shall order" the state and tribe to conclude a compact within 60 days. 25 U.S.C. § 2710(d)(7)(B)(iii). If the parties do not reach an agreement within the 60-day time period, they must submit their last best offers to a court-appointed mediator, who chooses one of the two proposed compacts. 25 U.S.C. § 2710(d)(7)(B)(iv). If the state does not consent to the proposed compact chosen by the mediator, the Secretary is notified. The Secretary is then required to issue regulations consistent with the selected proposal for the conduct of class III gaming on the reservation by the tribe. 25 U.S.C. § 2710(d)(7)(B)(vii).

13. Section 2710(d)(3)(C) provides a list of seven subjects that a class III gaming compact negotiated between a tribe and a state may address. A state's refusal to enter into a compact unless a tribe agrees to include within the compact a provision that is not within the scope of the seven subjects listed in Section 2710(d)(3)(C) constitutes a failure to engage in good faith negotiation in violation of Section 2710(d)(3)(A).

14. The seven subjects listed in Section 2710(d)(3)(C) are:

(i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;

(ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;

(iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

  (iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

  (v) remedies for breach of contract;

  (vi) standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

  (vii) any other subjects that are directly related to the operation of gaming activities.

## GENERAL ALLEGATIONS PERTAINING TO GAMING BY THE TRIBES

15. On October 8, 1999, Blue Lake entered into a class III Tribal-State gaming compact with the State. The compact was ratified by the California State Legislature by statute, Cal. Gov't Code § 12012.25(a)(6). On May 5, 2000, the compact was approved by Assistant Secretary–Indian Affairs Kevin Gover. Notice of Approved Tribal-State Compacts, 65 Fed. Reg. 31189 (May 16, 2000). Blue Lake has conducted gaming at its Blue Lake Casino and Hotel on its Indian Rerservation since that time.

16. On October 8, 1999, Chicken Ranch entered into a class III Tribal-State gaming compact with the State. The compact was ratified by the California State Legislature by statute, Cal. Gov't Code § 12012.25(a)(13). On May 5, 2000, the compact was approved by Assistant Secretary–Indian Affairs Kevin Gover. Notice of Approved Tribal-State Compacts, 65 Fed. Reg. 31189 (May 16, 2000). Chicken Ranch has conducted gaming at the Chicken Ranch Casino and Bingo on its Rancheria since that time.

17. On September 10, 1999, the Chemehuevi Indian Tribe entered into a Tribal-State gaming compact with the State. The compact was ratified by the California State Legislature by statute, Cal. Gov't Code § 12012.25(a)(12). On May 5, 2000, the compact was approved by Assistant Secretary–Indian Affairs Kevin Gover. Notice of Approved Tribal-State Compacts, 65 Fed. Reg. 31189 (May 16, 2000). The Chemehuevi Indian Tribe has conducted gaming at the Havasu Landing Resort and Casino on its Reservation since that time.

18. Pursuant to Section 11.2.1 of each of the Tribe's compacts ("Compacts"), the Tribes' Compacts will expire on December 31, 2020. However, if, on the date of expiration, the Tribes and the State are in negotiations to conclude an extension of the Compacts or are in negotiations to conclude new compacts, the expiration date of the Compacts will be extended for an additional 18 months.

19. On or about May 14, 2014, the Tribes began negotiating with the State to conclude a new compact that would replace each of the Tribes' current Compacts.

20. The Tribes conducted their compact negotiations with the State through a coalition of federally recognized California Indian tribes. The coalition of tribes called itself the Compact Tribes Steering Committee ("CTSC").

21. On or about March 5, 2015, as part of the initiation of the Compact negotiations between the CTSC Tribes and the State, the parties agreed upon a "protocol" for conducting their negotiations. A copy of the March 5, 2015, "Protocol for Tribal-State Compact Negotiations" is hereby incorporated by this reference and attached hereto as **Exhibit A**.

22. In the course of the negotiations, the State insisted that the CTSC Tribes negotiate over, and agree to include in their respective new compacts, subjects that are outside of what the IGRA defines as proper subjects of class III compact negotiations. The improper subjects that the State insisted upon included, but were not limited to provisions requiring that: (1) the CTSC Tribes recognize

and enforce State court spousal support orders against all tribal employees; (2) the CTSC Tribes recognize and enforce State court child support orders against all tribal employees; (3) the CTSC Tribes comply with California's minimum wage law and regulations; (4) the CTSC Tribes fund a grant fund for other California tribes; (5) the CTSC Tribes assess, and provide for the negotiation of agreements with local governments to mitigate, impacts on the off-reservation environment caused by the construction and/or operation of facilities in which no class III gaming activities occur; (6) the CTSC Tribes, as a precondition to commencing the construction of a facility in which class III gaming will be conducted, negotiate and enter into binding and enforceable agreements with nearby local governments to mitigate a broad spectrum of perceived impacts and to submit to arbitration issues upon which the Tribes and local governments cannot agree; (7) the CTSC Tribes waive exemptions established by Congress that exempt Indian tribes from the requirements of federal discrimination laws and require the CTSC Tribes to adopt and enforce prohibitions against employment discrimination, retaliation and harassment, and establish money damages remedies against the CTSC Tribes for engaging in such prohibited conduct; and (8) the CTSC Tribes adopt and enforce tribal laws relating to employee working hours, wages and working conditions that have been preempted by the National Labor Relations Act and the rules promulgated by the National Labor Relations Board (collectively "Improper Subjects of Negotiation").

23.   On or about, June of 2018, the State, through its negotiator, told the CTSC Tribes that, if they wanted to conclude a Compact this year with the Governor, the Tribes would have to agree to include in their replacement compacts the Improper Subjects of Negotiation and, if the CTSC Tribes failed to do so, that: (1) they would have to wait until the new Governor was elected in November, 2018, and took office and request that the new Governor resume compact negotiations; and (2) there would be no guarantee that the new Governor would

agree to be bound by the provisions the parties had reached agreement on in the last draft of the replacement compact exchanged between the parties prior to the State advising the Tribes that it would have to wait until the new Governor assumed office in 2019 to renew its request for compact negotiations.

## FIRST CAUSE OF ACTION

**(Violation of Section 2710(d)(3)(C) of the Indian Gaming Regulatory Act).**

24. The Tribes reallege each of the allegations set forth in Paragraphs 1 through 23 above and by this reference incorporate each allegation as if set forth herein in full.

25. In 25 U.S.C. § 2710(d)(3)(C)(i)-(vii), Congress set forth the subjects that may be included in a class III compact. The Improper Subjects of Negotiation do not fall within the scope of the subjects listed in Section 2710(d)(3)(C).

26. The State's insistence that the Tribes agree to include the Improper Subjects of Negotiation in the Tribes' replacement compacts constitutes a violation of 25 U.S.C. § 2710(d)(3)(C) of the IGRA.

27. Unless this Court issues an order declaring that the Improper Subjects of Negotiation are not within the permissible scope of subjects set forth in Section 2710(d)(3)(C), the parties will be unable to reach agreement on a replacement compact prior to the expiration of the Tribes' 1999 Compact in 2020, and the Tribes will be compelled to cease gaming in 2020.

28. If the Tribes are unable to conduct class III gaming on their reservations, the Tribes will not be able to generate the revenues necessary to fund essential governmental services on their respective reservations.

WHEREFORE, the Tribes pray as hereinafter set forth below.

## SECOND CAUSE OF ACTION

**(Violation of Section 2710(d)(3)(A) of the Indian Gaming Regulatory Act)**

29. The Tribes reallege each of the allegations set forth in Paragraph 1 through 28 above and by this reference incorporates each allegation as if set forth herein in full.

30. By insisting that the Tribes agree to include the Improper Subjects of Negotiation in their replacement compacts, the State has not negotiated with the Tribes in good faith to conclude a replacement compact.

31. The State's insistence that the Tribes agree to include the Improper Subjects of Negotiation in their replacement compacts violates the "good faith" standard imposed upon the State by 25 U.S.C. § 2710(d)(3)(A).

32. Unless this Court issues an order declaring that the States insistence that the Tribes agree to include in their replacement compacts the Improper Subjects of Negotiation constitutes bad faith negotiation on the part of the State in violation of 25 U.S.C. § 2710(d)(3)(A), the parties will be unable to reach agreement on a replacement compact prior to the expiration of the Tribes' 1999 Compact in 2020, and the Tribes will be compelled to cease gaming in 2020.

33. Without the ability to conduct class III gaming on their reservations, the Tribes will not be able to generate the revenue necessary to fund essential governmental services on their respective reservations.

WHEREFORE, the Tribes pray as hereinafter set forth below.

## **PRAYER FOR RELIEF**

Pursuant to their claims and causes of action alleged herein, the Tribes pray as follows:

1. That the Court declare that the Improper Subjects of Negotiation, which the States insisted that the Tribes agree to include in their replacement compacts, do not fall within the permissible scope of 25 U.S.C. § 2710(d)(3)(C) and, therefore, the Tribes do not have to negotiate with the State over those subjects;

11
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

  2. That the Court declare that the State, by insisting that the Tribes agree to include in their replacement compacts the Improper Subjects of Negotiation, did not negotiate with the Tribes in good faith, in violation of 25 U.S.C. § 2710(d)(3)(A);

  3. That the Court issue an order, pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii), directing the State and the Tribes to resume compact negotiations and conclude a replacement compact within 60 days of the date of the Court's order;

  4. That the Tribes be awarded their costs and reasonable attorney fees; and

  5. That the Court grants such other relief as may be deemed appropriate.

DATED: January 4, 2019   Respectfully Submitted,
            RAPPORT AND MARSTON

         By: /s/ *Lester J. Marston*
            LESTER J. MARSTON, Attorney for Chicken Ranch Rancheria of Me-Wuk Indians and the Chemehuevi Indian Tribe

DATED: January 4, 2019   DEHNERT LAW, PC

         By: /s/ *David Dehnert*
            David Dehnert, Attorney for the Blue Lake Rancheria

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF