# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, BLUE LAKE RANCHERIA, CHEMEHUEVI INDIAN TRIBE, HOPLAND BAND OF POMO INDIANS, and ROBINSON RANCHERIA**<br><br>**Plaintiffs,**<br><br>v.<br><br>**GAVIN NEWSOM, Governor of California, and STATE OF CALIFORNIA,**<br><br>**Defendants.** | CASE NO. 1:19-CV-0024 AWI SKO<br><br>**ORDER RE: MOTION FOR STAY PENDING APPEAL**<br><br><br><br>(Doc. 79) |

## I. Background

The Indian Gaming Regulatory Act ("IGRA") set up a statutory basis for the operation and regulation of gaming by Indian tribes. Three classes of gaming were defined. Class I and II consist of social games, bingo, and non-banking card games. Class III is the residual category and consists of what is common thought of as Nevada style gambling. In order for an Indian tribe to conduct class III gaming it must, among other things, enter into a compact with the state in which they are located.

The State of California entered into class III gaming compacts with a number of Indian tribes in 1999 ("1999 Compacts"). The 1999 Compacts ended on December 31, 2020 with an automatic extension to June 30, 2022. Plaintiffs Chicken Ranch Rancheria of Me-Wuk Indians, Blue Lake Rancheria, Chemehuevi Indian Tribe, Hopland Band of Pomo Indians, and Robinson Rancheria ("Tribal Plaintiffs") have 1999 Compacts with California. In 2014, the Tribal Plaintiffs

joined several other Indian tribes who have 1999 Compacts to form the Compact Tribes Steering Committee ("CTSC"). In 2015, the CTSC and California started to negotiate the terms of a new agreement on class III gaming to replace the 1999 Compacts which were coming to the end of their terms. Negotiations took place over the next few years. Dissatisfied with the negotiations, Tribal Plaintiffs filed suit against The State of California and Governor Gavin Newsom ("State Defendants") on January 4, 2019. The Tribal Defendants withdrew from the CTSC on September 26, 2019.

The Tribal Plaintiffs and State Defendants filed cross motions for summary judgment. The parties agreed on the nature of the dispute and their motions covered the exact same subject matter. IGRA states that "Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." 25 U.S.C. § 2710(d)(3)(A). The State Defendants summarized the dispute as: "the Plaintiff Tribes allege that during class III gaming compact negotiations the State Defendants insisted that they agree to include subjects in their new compacts that violate IGRA." Doc. 38-1, 1:9-10. The Tribal Plaintiffs agreed that their claim is that "the State's take it or leave it offer, which included improper subjects of negotiation and an illegal tax" constituted a failure on the part of the State Defendants to "negotiate[e] in good faith" under IGRA. Doc. 35-1, 1:24-26.

This court granted summary judgment in favor of the Tribal Plaintiffs. Doc. 77. Specifically, the State Defendants sought to negotiate topics at the edge of and beyond that which IGRA permitted. This constituted evidence of bad faith. The State Defendants failed to provide evidence of good faith to rebut; namely, they did not show how they offered meaningful concessions in return. As a consequence of the summary judgement order, this court ordered the parties to start IGRA's remedial procedures:

> (iii) If, in any action described in subparagraph (A)(i), the court finds that the State has failed to negotiate in good faith with the Indian tribe to conclude a Tribal-State compact governing the conduct of gaming activities, the court shall order the State

2

> and the Indian Tribe [tribe] to conclude such a compact within a 60-day period.
> ….
> (iv) If a State and an Indian tribe fail to conclude a Tribal-State compact governing the conduct of gaming activities on the Indian lands subject to the jurisdiction of such Indian tribe within the 60-day period provided in the order of a court issued under clause (iii), the Indian tribe and the State shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer for a compact. The mediator shall select from the two proposed compacts the one which best comports with the terms of this Act and any other applicable Federal law and with the findings and order of the court.

25 U.S.C. § 2710(d)(7)(B). We are still in the 60 day period before a mediator is appointed ("Secretarial Procedures"). In this time, the State Defendants have appealed the summary judgement order. Doc. 78. They have also sought a stay pending resolution of the appeal to avoid enforcement of the 60 day negotiation period and Secretarial Procedures. Doc. 29. The Tribal Plaintiffs oppose the request for stay. Doc. 87. The 1999 Compacts are still in effect through June 30, 2022.

## II. Legal Standard

"A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." Humane Soc'y of the United States v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009), citing Winter v. NRDC, Inc., 555 U.S. 7, 19 (2008). "We have held that a 'likelihood' of success per se is not an absolute requirement. Rather, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1085 (9th Cir. 2014) (discussing the parallel preliminary injunction standard), citing Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

## III. Discussion

**A. Likelihood of Success on the Merits**

The summary judgement order hinged on the requirement of "meaningful concessions" as laid out in Coyote Valley Band of Pomo Indians v. Cal. (In re Indian Gaming Related Cases

Chemehuevi Indian Tribe), 331 F.3d 1094 (9th Cir. 2003) and Rincon Bank of Luiseno Mission Indians of the Rincon Reservation v. Schwarzenegger, 602 F.3d 1019 (9th Cir. 2010) to rebut evidence of bad faith negotiation. The State Defendants argue that they "need Ninth Circuit clarification as to whether the expansive reading the Order ascribes to the meaningful concessions requirement for revenue sharing agreements in [Rincon] is what the Ninth Circuit intended." Doc. 88, 7:8-11. The Tribal Plaintiffs disagree and assert that the summary judgement order does not improperly "expand Rincon's meaningful concession analysis." Doc. 87, 18:14-15. As the summary judgment order itself noted, the interpretation of meaningful concession applied was heavily based on the Northern District of California's decision in See Big Lagoon Rancheria v. California, 759 F. Supp. 2d 1149 (N.D. Cal. 2010): "The Ninth Circuit has only discussed 'meaningful concessions' in the context of fee demands. See Coyote Valley II, 331 F.3d at 1111; Rincon, 602 F.3d at 1036. The expansion of the requirement to other topics of negotiation relies on the precedent of Big Lagoon Rancheria, 759 F. Supp. 2d at 1162." Doc. 77, 8:27-28 n.1.

"Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.' Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" Republic of Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988), quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1952) and National Wildlife Fed'n v. Coston, 773 F.2d 1513, 1517 (9th Cir. 1985). There is limited precedent interpreting the requirement of meaningful concessions. This circumstance qualifies as one where there are serious questions that lead to the State Defendants having a fair chance of success on the merits in their appeal.

**B. Irreparable Injury**

The injury that the State Defendants argue they will likely suffer is the implementation of a new compact through Secretarial Procedures that "ignore basic Gaming Operation or Gaming Facility employee rights such as receiving a minimum wage consistent with other working Californians. Secretarial procedures could also fail to adequately protect these employees from

4

workplace sexual harassment, discrimination, or retaliation. Secretarial procedures may fail to provide meaningful tort protections to patrons who travel to tribal casinos to engage in Gaming Activities." Doc. 79-1, 9:6-10. The State Defendants argue that the injury is irreparable because "If not stayed, the Order's practical effect would deprive the State Defendants of any benefit of an appeal. Clearly, if the Ninth Circuit were to find in the State Defendants' favor, any decision would certainly issue well after the institution of secretarial procedures, thus depriving the State Defendants of any effective appellate remedy." Doc. 79-1, 9:14-17. In the reply, the State Defendants state that "No mechanism is available to this Court to dictate the inclusion of the disputed provisions into a compact with the Plaintiff Tribes, if the Ninth Circuit rules in the State Defendants' favor." Doc. 88, 3:19-21. The Tribal Plaintiffs point out that "The State appears to suggest, without authority, that a later appeals court decision reversing this Court will not invalidate or require modification of any compact provisions reached as part of the mandated remedial process. This suggestion is without merit. If, on appeal, the Ninth Circuit reverses the Order, this matter will be remanded to this court for further proceedings and the Ninth Circuit's ruling would have to be reflected in any final compact provisions or secretarial rulemaking." Doc. 87, 8:5-11. The State Defendants appear to be suggesting that Secretarial Procedures would moot the appeal without formally making that argument. The Tribal Plaintiffs have correctly pointed out that the argument is unformed and lacks necessary detail. The Tribal Plaintiffs appear to be arguing (and this court presumes) that a Ninth Circuit ruling reversing the summary judgement order would be able to be meaningfully enforced as any compact imposed through Secretarial Procedures would only be effective contingent on the ultimate result of this case. The State Defendants have not described the legal mechanisms through which they would suffer irreparable injury. Further development of both sides' positions on this point is needed. There is insufficient legal briefing to determine whether or not the State Defendants would suffer any injury.

**C. Balance of Equities**

The Tribal Plaintiffs argue that "a decision on the State's appeal to the Ninth Circuit will almost certainly not be issued before the Tribe's compacts terminate on June 30, 2022. Once the

compacts terminate, the Plaintiff Tribes will no longer be authorized to conduct class III gaming, and they will be deprived of their primary source of governmental revenue." Doc. 87, 11:23-28. In support, the Tribal Plaintiffs have provided the declarations of Jason Ramos (elected member of the Blue Lake Rancheria Business Council), Evangelina Hoover (elected member of the Chemehuevi Indian Tribe Tribal Council), and Lloyd Mathiesen (Chairman of the Chicken Ranch Rancheria) which describe how the loss of class III gaming revenue would severely disrupt the funding of essential government services. See Docs. 87-1, 87-2, and 87-3. In response, the State Defendants argue that "Harm to the Plaintiff Tribes is also speculative. Plaintiff Tribes concede their compacts are valid for another thirteen months. No one can prognosticate what may occur in thirteen months. Moreover, Plaintiff Tribes cite no authority for the proposition that the State can forcibly close the doors of their casinos." Doc. 88, 6:12-15. The last sentence of the quote is a strong assertion with wide ranging potential consequence. The State Defendants appear to argue that they are powerless to constrain Tribal Plaintiffs from conducting gaming activity. If this court were to accept the State Defendants' argument and rule in their favor, the State Defendants might become judicially estopped from preventing the Tribal Plaintiffs from continuing class III gaming under the terms of the 1999 Compacts past June 30, 2022 if this litigation is still pending at that time. If the State Defendants do intend to state that a stay should be denied for that reason, they need to make that clear. Based on the materials submitted, the Tribal Plaintiffs have established that they will likely suffer significant injury beginning in July 2022 if a stay is granted.

**D. Stay**

The State Defendants have not shown the likelihood of irreparable injury. While they have shown serious questions on the merits of the case, the balance of hardships tips in favor of the Tribal Plaintiffs. In key part, the parties' briefing has left certain legal points and positions unclear. A full stay pending the ultimate resolution of the appeal is not warranted based on the briefing presented.

This court will grant a short stay to allow State Defendants to seek a further stay from the Ninth Circuit. While this current stay request has been pending, the parties have not been

negotiating. A short stay will hopefully allow this question to be resolved; if a further stay is denied, it will permit the parties to focus their attention for 60 days on negotiations as directed by IGRA. The effect of the summary judgement order is stayed through August 31, 2021. Absent further order, the negotiation period and Secretarial Procedures specified in 25 U.S.C. § 2710(d)(7)(B) shall begin on September 1, 2021.

## IV. Order

The State Defendants' motion for stay is GRANTED in part and DENIED in part. The summary judgement order (Doc. 77) is stayed through August 31, 2021.

IT IS SO ORDERED.

Dated: May 27, 2021

_____
SENIOR DISTRICT JUDGE