LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: ljmarston@rmlawoffice.net
*Attorney for Plaintiffs*
*Chemehuevi Indian Tribe, Chicken Ranch Rancheria,*
*Hopland Band of Pomo Indians, Robinson Rancheria*

DAVID B. DEHNERT
California State Bar No. 214243
DEHNERT LAW, PC
475 Washington Blvd.
Marina Del Rey, California 90292
Telephone: 310-822-3222
Facsimile: 310-577-5277
Email: david@dehnertlaw.com
*Attorney for Plaintiff Blue Lake Rancheria*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, BLUE LAKE RANCHERIA, CHEMEHUEVI INDIAN TRIBE, HOPLAND BAND OF POMO INDIANS, and ROBINSON RANCHERIA,<br><br>                    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, Governor of California, and STATE OF CALIFORNIA,<br><br>                    Defendants. | Case No.: 1:19-CV-00024-AWI-SKO<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO SHORTEN TIME REGARDING THE COURT'S CONSIDERATION OF TRIBES' MOTION TO APPOINT MEDIATOR**<br><br>Hearing: TBD<br>Time: TBD<br>Courtroom: 2, 8th Floor<br>Judge: Honorable Anthony W. Ishii<br>Action Filed: January 4, 2019 |

**INTRODUCTION**

On March 31, 2021, this court ordered the State to conclude a compact with the Tribes in 60 days. While not expressly an injunction, the Court's March 31, 2021, Order, ECF 77 ("March 31 Order"), is functionally equivalent to an injunction, because it mandated under the Indian Gaming Regulatory Act's ("IGRA"), 25 U.S.C. §§ 2710-2712, carefully crafted and detailed remedial scheme that the parties conclude a compact in 60 days. The State has treated the March 31 Order to conclude a compact as optional or voluntary.

The State refused to comply with the March 31 Order and expressed no intention to negotiate with the Tribes in good faith from April 1, 2021, to May 31, 2021. Instead, the State rejected negotiations in favor of procedural gamesmanship and continued its stonewalling strategy. The State continues this same strategy today. Therefore, this Court should shorten time and appoint a mediator.

**FACTUAL STATEMENT**

In a telephone call on April 2, 2021, counsel for the Tribes notified the State of their intention to negotiate with the State with the goal of concluding a compact. Decl. of Lester J. Marston in Supp. of Reply to Opp'n Ex Parte Appl. ("Marston Decl."), ¶ 2. In the April 2 call, the Tribes' counsel informed the State's counsel that they expected to send an offer compact to the State by April 23, 2021, and that they hoped to negotiate its terms in May 2021. *Id.* at ¶ 3. Counsel for both parties agreed that resolving differences on the issues litigated in this case was not necessary to continue negotiations with the goal of concluding a compact. *Id.* The Tribes' counsel informed the State's counsel of their intention to submit the Tribes' last offer compact to the Office of Indian Gaming for their review to determine if it complied with IGRA, which, according to the Tribes' counsel, was in the best interests of both parties because it would indicate whether the Secretary of the Interior would approve it. *Id.* In the call, counsel for the Tribes specifically requested that the State engage in negotiations and, if the State was willing to

1    negotiate and not seek a stay of the March 31 Order, the Tribes' counsel would
2    recommend to their clients that they stipulate to staying proceedings in the Ninth
3    Circuit if the State appealed so that the State could focus on the compact
4    negotiations. *Id.*

5        On April 6, 2021, counsel for the Tribes confirmed the April 2 phone call
6    with the State's counsel by letter and their intention to engage in good faith
7    negotiations with the State to conclude a compact. *Id.* at ¶ 4.

8        By an email message sent to counsel for the State on April 16, 2021, counsel
9    for the Tribes identified the tribal leaders and attorneys who would be participating
10   in compact negotiations by Zoom conference call. *Id.* at ¶ 5. The message
11   expressed the Tribes' intent to conclude a compact prior to the May 31, 2021,
12   deadline set by the March 31 Order, because the Tribes proposed that negotiations
13   occur beginning in late April and that they conclude by May 31. *Id.*

14       The State did not respond until April 22, 2021, stating through counsel that
15   the State intended to file a notice of appeal, a motion to stay, and an ex parte
16   request for the Court to shorten time to hear the motion to stay the following day.
17   *Id.* at ¶ 6. The State's counsel also said that if the District Court were to deny the
18   stay, the state would seek a stay with the Appellate Court. *Id.*

19       This Court issued its order staying the effects of its March 31 Order on May
20   27, 2021. Consequently, the parties were able to negotiate from March 31 to May
21   27, or 57 days. The State chose not to negotiate during this nearly 60-day period.
22   The stay imposed by the May 27 Order ended on August 31, 2021.

23       The Tribes requested that the State begin compact negotiations on
24   September 1, 2021. *See* ECF No. 102-3 at ¶ 4, Exhibit B (ECF No. 102-3 at 20-
25   23). The Tribes sent an offer compact to the State on September 1. *See id.* at 22.
26   On September 3, 2021, the 60-day period established by the March 31 Order and
27   IGRA for the parties to conclude a compact ended.

28

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

The State did not confirm receipt of the Tribes' September 1, 2021, letter and offer compact until September 7, 2021, by email message. Marston Decl. at ¶ 7. The State did not provide a substantive response until September 10, 2021, which included the State's offers to each of the Tribes with letters explaining the State's reasoning for including the same subjects this Court determined were per se bad faith or evidence of bad faith ("Prohibited Provisions") in the compact offers with no meaningful concessions. *Id*. The compact offers and letters were nearly identical for each of the Tribes. *Id*.

The State's continued insistence on including the Prohibited Provisions in their compact offers to the Tribes is consistent with similar offers the State has made to other California tribes. *See* Decl. of George Forman in Supp. of Reply to Opp'n Ex Parte Appl. ("Forman Decl."). The Tribes' current compacts will expire on June 30, 2022. In less than eight months, if the Tribes do not have a renewed compact or Secretarial Procedures in place, they will be forced to shutter their gaming facilities. An order by this Court to shorten time and appoint a mediator will help avoid that catastrophic outcome.

## ARGUMENT

### I. Denial of the Application for an Order Shortening Time Is Inconsistent with IGRA's Remedial Scheme.

Denial of the application would be inconsistent with the plain language of IGRA, Congress' intent, and federal court decisions analyzing IGRA's bad faith remedial scheme. It would cause the Tribes irreparable harm by denying the Tribes the benefits of those remedial procedures.

IGRA articulates a clear, comprehensive, and self-contained remedial scheme. IGRA explicitly enumerates and demarcates the role and authority of the court, the mediator, and the Secretary, and the sequence and timeframe for each stage of the remedial process. The elements of IGRA's remedial process are stated in mandatory terms. Upon a finding of bad faith, "the court shall order the State

and the Indian Tribe [tribe] to conclude such a compact within a 60-day period." 25 U.S.C. § 2710(d)(7)(B)(iii). If a compact is not concluded, "the Indian tribe and the State shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer . . . ." 25 U.S.C. § 2710(d)(7)(B)(iv). The mediator "shall select from the two proposed compacts the one which best comports with the terms of this Act and any other applicable Federal law and with the findings and order of the court." *Id*.

Courts addressing the implementation of IGRA's remedial procedures have consistently held that IGRA procedures are mandatory and cannot be circumvented or altered. In *Stand Up for Cal.! v. United States DOI*, 959 F.3d 1154 (9th Cir. 2020), the Ninth Circuit rejected a challenge to the issuance of Secretarial Procedures based on the assertion that the procedures are not the functional equivalent of a tribal-state compact and, thus, violate the Johnson Act. The Court found that such an interpretation would render the IGRA remedial scheme "a 'nullity' and inappropriately deprive [IGRA] of its effect." *Id*. at 1160. The Court emphasized that IGRA's remedial provisions are mandatory: "Although state consent is also a priority, a state's failure to enter good-faith negotiations or, subsequently, to consent to a mediator-selected compact—where the state otherwise makes such gaming lawful on non-Indian lands—triggers automatic Secretarial Procedures." *Id*. at 1160-1161.

In *New Mexico v. DOI*, 854 F.3d 1207, 1217, 1225 (10th Cir. 2017), the Tenth Circuit ruled that the 25 C.F.R. Part 291 regulations were invalid because Congress had carefully drafted IGRA's remedy and left the Secretary no discretion to circumvent that process by issuing Secretarial procedures without a court finding of bad faith. "[T]he loss of this procedural right . . . threatens this concrete interest by fundamentally changing the process under which a state and a tribe negotiate a compact . . . ." *Id*. at 1217. Similarly, in *Texas v. United States*, 497 F.3d 491 (5th Cir. 2007), the Fifth Circuit invalidated the § 291 regulations, ruling

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

that the Secretary could not exercise authority not set forth in IGRA, stating that IGRA's good faith "remedial plan is self-contained and fully sufficient." *Id.* at 500. Consistent with IGRA, this Court's March 31 Order required the parties to fulfill the requirements of IGRA's remedial scheme:

> [T]he parties ARE HEREBY ORDERED to proceed pursuant to the remedial process set forth in the IGRA, 25 U.S.C. § 2710(d)(7)(B)(iii)-(vii). As the immediate remedy, the parties ARE HEREBY ORDERED to conclude a gaming compact within 60 days of the date of this order or to provide a proposed stipulation to extend the time for concluding the gaming compact.

March 31 Order at 21.

The parties were required to conclude a compact within 60 days after the March 31 Order. Beginning April 2, 2021, and then again on April 6th and April 16th, counsel for the Tribes attempted to start negotiations with the State to conclude a compact before May 31, 2021. Marston Decl., ¶¶ 3-5. The State refused to negotiate. *Id.* at ¶ 6. Counsel for the Tribes specifically requested that the State not ignore the March 31 Order by seeking a stay. *Id.* at ¶ 3. Instead, the State responded on April 22, 2021, to inform the Tribes that it intended to file a notice of appeal, a motion to stay, and an ex parte request for the Court to shorten time to hear the motion to stay the following day. *Id.* at ¶ 6. Counsel for the State also said that if the District Court were to deny the stay, the State would seek a stay with the Appellate Court. *Id.*

The State's unsupported position is that the 60-day period imposed by IGRA and the March 31 Order was automatically tolled prior to this Court's May 27, 2021, Order, ECF 90 ("May 27 Order"). Nothing in IGRA's remedial scheme would permit non-compliance to toll IGRA's remedial process,[1] nor has the State explained how such a tolling may be instated.

---

[1] The parties did not extend the time for negotiations by submitting to the Court "a proposed stipulation to extend the time for concluding the gaming compact."

The Court's May 27 Order paused the 60-day clock on the date that the temporary stay went into effect, May 27, 2021, after 57 days had run. In its May 27 Order, the Court confirmed that the parties were still subject to the 60-day negotiation obligation. May 27 Order at 3 ("We are still in the 60 day period before a mediator is appointed . . . ."). The Court noted that, "[w]hile this current stay request has been pending, the parties have not been negotiating." *Id*. at 6-7. However, the Tribes had made numerous good faith attempts to negotiate with the State pursuant to the March 31 Order and IGRA during this period. Marston Decl. at ¶¶ 4-5. The parties had not been negotiating only because the State had refused to negotiate with the Tribes. *See generally*, Marston Decl.

The 60-day period to conclude a compact resumed on September 1, 2021, after the temporary stay expired by its terms. An additional 28 days have now run. The parties are, thus, well beyond the 60-day negotiation period.

The State maintains that the 60-day negotiation period restarted anew on September 1, citing to the Court's statement in the May 27 Order that: "The effect of the summary judgement order is stayed through August 31, 2021. Absent further order, the negotiation period and Secretarial Procedures specified in 25 U.S.C. § 2710(d)(7)(B) shall begin on September 1, 2021." *Id*. at 7. The State's interpretation of the Court's language is not unreasonable, but it cannot be squared with IGRA. IGRA does not authorize courts to restart the 60-day negotiation period anew, especially when the tribe has not agreed to extend the time for negotiation. A more reasonable interpretation is that the Court intended that the parties *resume* negotiations on September 1, 2021.

It is clear the State had no intention to negotiate beginning April 1, 2021, and instead it sought to delay the enforcement of IGRA's requirements by seeking a stay with this Court and the Court of Appeals. It is also clear the State has no intention to negotiate in good faith now, and instead it is seeking to delay negotiations, the selection of a compact by the court appointed mediator, and the

1  potential imposition of Secretarial Procedures until after a decision is rendered in

2  its appeal to the Ninth Circuit.

3    The State is now demanding separate negotiations with each of the Tribes,

4  which will make the negotiation process take longer. The State continues to insist

5  on the inclusion of the compact provisions that the Court found to be evidence of

6  bad faith and refuses to provide meaningful concessions for those otherwise

7  impermissible provisions. These actions are simply an extension of the State's

8  strategy of running out the clock on the Tribes' compacts to pressure them to agree

9  to the State's terms.

10    The denial of the Tribes' application for an order shortening time and the

11  extension of the time period for negotiation would cause the Tribes irreparable

12  harm by denying them the benefits of IGRA's remedial process and by increasing

13  the likelihood that the Tribes' compacts will expire before a new compact can be

14  ratified or Secretarial procedures implemented.

15  **II.    There Is Good Cause to Appoint a Mediator Because the**
     **State Has Refused to Comply with this Court's March 31**
16   **Order Regarding Meaningful Concessions.**

17    The State argues in its Opp'n Ex Parte Appl. ("Opposition") that it is

18  "complying with the Stay Order in good faith" because, in the parties' post-

19  September 1st negotiations, "the State Defendants described their offers of

20  independently meaningful concessions improving on the Plaintiff Tribes' 1999

21  Compacts [and] identified provisions sought in exchange. . . ." Opposition at 4-5.

22  The State's claim that it is complying with this Court's orders in good faith fails

23  because: (1) this Court already specifically rejected the very items the State asserts

24  constitute meaningful concessions; and (2) the State's "concessions," as a matter of

25  law, cannot constitute meaningful concessions because they are "gaming rights that

26  tribes are entitled to negotiate for under IGRA. . . ." *Rincon Band v.*

27  *Schwarzenegger*, 602 F.3d 1019, 1039 (9th Cir. 2010) ("*Rincon*"). Because the

28

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

State has refused to conform its compact proposals to this Court's March 31 Order, there is good cause to shorten time and appoint a mediator on an expedited basis.

First, there is good cause to appoint a mediator because the State, during the post-September 1st negotiations, has continued to assert that the very same provisions this Court rejected as meaningful concessions can be relied upon by the State to justify the inclusion of the compact topics this Court found constituted a failure to negotiate in good faith. Specifically, the State's September 10, 2021, letter claims that the State's "proposal includes concessions that are independently meaningful compared to the status quo under the Tribe's 1999 Compact," but the list of purported "meaningful concessions" in that letter is, for all intents and purposes, the same list relied upon by the State in its reply to the Tribes' opposition to the State's motion for summary judgment.[2]

Relying on *Rincon*, this Court squarely rejected these purported concessions as "the type of holistic analysis <u>Rincon</u> disapproved of." March 31 Order at 20. The Court also held that "[w]hat constitutes a meaningful concession is something beyond that which is negotiated as part of a standard IGRA compact. . . ." *Id*. at 19 (citing *Rincon*, 602 F.3d at 1039) ("gaming rights that tribes are entitled to negotiate for under IGRA, like device licensing and time, *see* § 2701(d)(3)(C)(vi), cannot serve as consideration for general fund revenue sharing; the consideration must be for something 'separate' than basic gaming rights."). Thus, during the post-September 1st negotiations, the State has not proposed any new meaningful concessions in exchange for the provisions this Court found to constitute bad faith. Rather, the State has continued to identify the same purported concessions that this Court already found insufficient.

---

[2] *Compare* Decl. of Timothy M. Muscat in Supp. Opp'n Ex Parte Appl. ("Muscat Decl."), ¶ 4 and Exhibit C, (citing reduced revenue sharing, a 25-year compact term, number of gaming devices, force majeure, etc., as meaningful concessions), to State's Reply Brief, ECF No. 43 at 17-18 (citing the same list of purported concessions).

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

The compact offered by the State during the recent negotiations is the same compact the Court reviewed and found to constitute a failure to negotiate in good faith. The State has simply taken the compact that it has been offering the Tribes for five years and sought to unearth provisions in it that the State can argue might benefit the Tribes. The State has made, and continues to make, no effort to engage the Tribes on what they might find to be sufficiently meaningful to justify the inclusion of the Prohibited Provisions this Court found to be evidence of bad faith. Because the State refuses to offer new meaningful concessions, refuses to inquire as to what the Tribes might agree to as meaningful concessions, and refuses to meet with the Tribes without demanding the inclusion of the topics this Court found to be evidence of bad faith, there is good cause to shorten time and appoint a mediator.

Furthermore, the State's "concessions" cannot, as a matter of law, constitute meaningful concessions because they are gaming rights that the Tribes are already entitled to negotiate for under IGRA. The purported concessions include: elimination of the licensing pool (*i.e.*, changes to the number of slot machines a tribe can offer), modifications to the Special Distribution Fund (*i.e.*, the assessment by the State to defray the costs of regulating gaming activities), adding an extra five years to the compact duration, and an increase in the number of gaming facilities the Tribes can operate. *See* Muscat Decl., Exhibit C. These are all routine "gaming activities" authorized by IGRA, § 2710(d)(3)(C). They cannot constitute meaningful concessions because they are "gaming rights that tribes are entitled to negotiate for under IGRA. . . ." *Rincon*, 602 F.3d at 1039. The State's actions in the post-September 1st negotiations, therefore, violate the March 31 Order regarding meaningful concessions. The State's claim that it offered "concessions that are independently meaningful compared to the status quo under the Tribe's 1999 Compact," September 10, 2021 letter, p. 3, also fails because a state does not

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

1  "make[] 'meaningful concessions' whenever it offers a bundle of rights more
2  valuable than the status quo." *Id*. at 1040.

3      Moreover, in the post-September 1st negotiations, the State has continued to
4  demand that the Tribes accept provisions that the State has refused to negotiate
5  with the Tribes throughout the Compact Tribes Steering Committee ("CTSC
6  Tribes") negotiations. For instance, early in the negotiations between the State and
7  the CTSC Tribes, the State presented a new, significantly revised TLRO that the
8  CTSC Tribes had no role in drafting. Forman Decl., ¶ 5. At no point between the
9  State's initial presentation of its new TLRO and mid-July 2020, was the State
10 willing to engage in substantive negotiations about the State's proposed new
11 TLRO. *Id*. In or about July 2018, the CTSC Tribes responded to the State's
12 proposed new TLRO, but by mid-July 2020, the State had not responded or
13 otherwise negotiated about the CTSC Tribes' proposed revised TLRO. *Id*. at ¶ 6. In
14 the post-September 1st negotiations, the State has continued to press the Tribes to
15 accept the new TRLO with no revisions.

16     The CTSC Tribes' current compacts created the Revenue Sharing Trust
17 Fund ("RSTF"), from which each California tribe operating between 0 and 350
18 Gaming Devices would receive up to $1.1 million per year, with any surplus in
19 excess of what is needed to distribute that amount to each eligible Tribe being
20 retained in the RSTF for distribution in future years. *Id*. at ¶ 7. From the start of the
21 negotiations between the CTSC Tribes and the State, the State proposed to include
22 in new compacts the State-created Tribal Nations Grant Fund ("TNGF"), to be
23 funded with any surplus funds in the RSTF. *Id*. The CTSC Tribes responded to the
24 State's proposal for the TNGF by proposing to create the RSTF II, so as to provide
25 funding for RSTF-eligible tribes without also contributing to the TNGF. *Id*.

26     Every draft compact received by the CTSC Tribes from the State contained
27 the TNGF. *Id*. at ¶ 8. Between the start of the CTSC Tribes' negotiations and mid-
28 July 2020, the State never responded to the CTSC Tribes' proposed RSTF II, nor

did the State ever negotiate about the amount that the CTSC Tribes would be required to pay into the RSTF. *Id*. In the post-September 1st negotiations, the State has continued to press the Tribes to accept the TNGF without any modifications to the State's design.[3]

In sum, during the court-ordered negotiations, the State has refused to offer any meaningful concessions as required by this Court's order and has instead sought to rely upon provisions that this Court already rejected and which cannot, as a matter of law, constitute meaningful concessions under *Rincon*. The State has also continued to demand that the Tribes accept compact terms that the State has steadfastly refused to modify upon the Tribes' request. Accordingly, there is good cause to shorten time and appoint a mediator.

### III.   Given the Termination Date of the Tribes' Compacts, the Court Should Shorten Time and Appoint a Mediator on an Expedited Basis.

The Tribes request that the Court consider the application for an order shortening time must be considered by the Court against the background of the practical reality of the looming termination of the Tribes' 1999 compacts. If the order shortening time is granted, the parties, to the degree that they choose to do so, will be able to continue negotiating to conclude a compact while the briefing, the Court's deliberations, and the appointment of the mediator take place. In the event that the parties reach agreement on a compact before the Court rules on the Motion, the mediator can be released from her obligations. If a compact is not concluded before the Court rules on the Motion, the parties will reach the end of the 60-day period, regardless of how the Court calculates it, with a mediator already appointed and prepared to review and select from the compacts submitted

---

[3] The CTSC Tribes also made multiple requests to the State to extend the terms of the CTSC Tribes' existing compacts, which the State rejected but expressed a willingness to continue negotiating. *Id*. ¶ 9.

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

by the parties. If the Court waits until October 31st to begin the process of appointing a mediator, that will add an additional and unnecessary delay that pushes the Tribes closer to the termination date of their current compacts. As such, the Tribes respectfully request that the Court shorten time and appoint a mediator on an expedited basis.

Finally, assuming, *arguendo*, that the State's accounting of the time to conclude a compact is correct—which it is not, the State's negotiation posture makes clear that the parties cannot conclude a compact pursuant to the remedial procedure set forth in IGRA, and an order shortening time and appointing a mediator is appropriate. As shown above, the State has failed to manifest the requisite intent to negotiate in good faith. The State's opening and subsequent offers evidence the continued strategy to run out the clock on the Tribes' compacts and pressure them to agree to the State's terms. Time is of the essence. Waiting another sixty days to appoint a mediator when the State is not negotiating in good faith would be contrary to the purposes of IGRA and averse to the Tribes' interests. IGRA requires agreement on a compact within sixty days or else the Court will appoint a mediator; it does not require the Tribes to wait another sixty days when the State has demonstrated an unwillingness to offer meaningful concessions in exchange for the Prohibited Provisions. Thus, even if the Court finds that sixty days have not passed, under the circumstances, the Court should grant the order shortening time and appoint a mediator.

## CONCLUSION

For the foregoing reasons, the Tribes' respectfully request that the Court grant the ex parte application for an order shortening time.

DATED: October 1, 2021                    RAPPORT AND MARSTON

/s/ *Lester J. Marston*
_____
LESTER J. MARSTON
*Attorney for Plaintiffs Chemehuevi*

Indian Tribe, Chicken Ranch
Rancheria of Me-Wuk Indians,
Hopland Band of Pomo Indians, and
Robinson Rancheria

DATED: October 1, 2021            DEHNERT LAW, PC

                                  /s/ David Dehnert
                                  DAVID DEHNERT
                                  Attorney for Plaintiff
                                  Blue Lake Rancheria

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]

1

## CERTIFICATE OF SERVICE

I am employed in the County of Mendocino, State of California. I am over the age of 18 years and not a party to the within action; my business address is that of Rapport & Marston, 405 West Perkins Street, Ukiah, California 95482.

I hereby certify that I electronically filed the foregoing:

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO SHORTEN TIME REGARDING THE COURT'S CONSIDERATION OF TRIBES' MOTION TO APPOINT MEDIATOR**

 with the Clerk of the United States District Court for the Eastern District of California by using the CM/ECF system on October 1, 2021, which generated and transmitted a notice of electronic filing to CM/ECF registrants.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; executed on October 1, 2021, at Ukiah, California.

/s/ Ericka Duncan
Ericka Duncan

REPLY TO OPPOSITION TO APPLICATION FOR ORDER SHORTENING TIME
[Case No.: 1:19-CV-00024-AWI-SKO]