**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS; CHEMEHUEVI INDIAN TRIBE; BLUE LAKE RANCHERIA; HOPLAND BAND OF POMO INDIANS; ROBINSON RANCHERIA, <br>    *Plaintiffs-Appellees,* <br><br> v. <br><br> STATE OF CALIFORNIA; GAVIN NEWSOM, Governor of California, <br>    *Defendants-Appellants.* | No. 21-15751 <br><br> D.C. No. 1:19-cv-00024-AWI-SKO <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted February 16, 2023
San Francisco, California

Filed April 25, 2023

Before: Kim McLane Wardlaw, Daniel A. Bress, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[*]

### Attorneys' Fees

The panel denied a request for attorneys' fees by Indian Tribes that prevailed in their lawsuit against the State of California under the federal Indian Gaming Regulatory Act.

The Tribes sued the State of California for its failure to comply with IGRA. In an earlier opinion (*Chicken Ranch I*), the panel ruled for the Tribes, first noting that California Government Code § 98005 explicitly waived the state's sovereign immunity from suit. The panel held that California violated IGRA by failing to negotiate in good faith a Class III gaming compact with the Tribes, and it ordered the district court to implement IGRA's remedial framework.

After prevailing, the Tribes sought attorneys' fees spent litigating the *Chicken Ranch I* appeal. Because IGRA does not authorize fee shifting, the Tribes sought attorneys' fees under California Code of Civil Procedure § 1021.5, which allows an award of fees to a prevailing party "in any action which has resulted in the enforcement of an important right affecting the public interest," if certain other conditions are met.

California argued that, although it consented to the Tribes' underlying IGRA action, it did not submit to federal court adjudication of an attendant attorneys' fee motion because attorneys' fees are not available through an IGRA

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

action. The panel concluded that this contention merely collapsed California's sovereign immunity defense into its merits argument that IGRA's lack of a fee-shifting provision was dispositive.

The panel held that, because the Tribes prevailed on a federal cause of action, they were entitled to attorneys' fees only if federal law allowed them. Because it did not, the panel denied the Tribes' fee request. The panel rejected the Tribes' argument that there is an exception authorizing attorneys' fees in federal question cases when the claims implicate "substantial and significant issues of state law." The panel distinguished *Independent Living Center of Southern California, Inc. v. Kent*, 909 F.3d 272 (9th Cir. 2018), in which there was no federal cause of action but there was federal question jurisdiction over a state-law claim that fell within a small category cases where a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disturbing the federal-state balance approved by Congress.

---

## COUNSEL

Timothy M. Muscat (argued), Deputy Attorney General; Aimee Feinberg, Deputy Solicitor General; William P. Torngren, Supervising Deputy Attorney General; Sara J. Drake, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; Sacramento, California; Noel Fischer, Deputy Attorney General; Office of the California Attorney General; San Diego, California; for Defendants-Appellants.

Lester J. Marston (argued), Rapport and Marston, Ukiah, California; David B. Dehnert, Dehnert Law PC, Marina Del Rey, California; Kostan R. Lathouris, Lathouris Law PLLC, Henderson, Nevada; for Plaintiffs-Appellees.

Kristin L. Martin, McCracken Stemerman & Holsberry LLP, Oakland, California, for Amicus Curiae Unite Here International Union.

George Forman, Jay B. Shapiro, and Margaret C. Rosenfeld, Forman Shapiro & Rosenfeld, Nicasio, California, for Amici Curiae Bear River Band of Rohnerville Rancheria, Cahuilla Band of Indians, Cachil Dehe Band of Wintun Indians of the Colusa Indian Community, and the Soboba Band of Luiseño Indians.

Laura E. Hirahara, California State Association of Counties, Sacramento, California, for Amicus Curiae California State Association of Counties.

---

## OPINION

BRESS, Circuit Judge:

We decide an issue of attorneys' fees. The plaintiff Indian Tribes prevailed in their lawsuit against the State of California under the federal Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq*. But because IGRA does not authorize fee shifting, the Tribes ask for attorneys' fees under California law. We hold that because the plaintiffs prevailed on a federal cause of action, they are entitled to attorneys' fees only if federal law allows them. Because it does not, we deny the Tribes' fee request.

I

The plaintiff Tribes—Chicken Ranch Rancheria of Me-Wuk Indians, Blue Lake Rancheria, Chemehuevi Indian Tribe, Hopland Band of Pomo Indians, and Robinson Rancheria—sued the State of California for its failure to comply with IGRA. In *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024 (9th Cir. 2022) (*Chicken Ranch I*), we ruled for the Tribes.

We considered in *Chicken Ranch I* whether California violated IGRA by failing to negotiate in good faith a Class III gaming compact with the Tribes. *See* 25 U.S.C. § 2710(d)(3)(A). Class III gaming—high-stakes Las Vegas-style casino gambling—is permitted on Indian lands only if, among other things, a tribe and the state enter a tribal-state compact. *Chicken Ranch I*, 42 F.4th at 1032. In *Chicken Ranch I*, we first noted that California Government Code § 98005 explicitly waived the state's sovereign immunity from suit. *Id.* at 1032 n.1. We then held that, under IGRA, California had failed to engage in good faith negotiations with the Tribes because California had insisted that the Tribes agree to compact provisions relating to family law, environmental regulation, and tort law that were far outside of IGRA's permissible topics of negotiation. *Id.* at 1029 (citing 25 U.S.C. § 2710(d)(3)(C)).

Because California had not negotiated in good faith, we ordered the district court to implement IGRA's remedial framework, which is "designed to force the state to the bargaining table and get the deal done." *Id.* at 1029. *Chicken Ranch I* contains extensive discussion of the intricacies of IGRA's compact negotiation framework and how California had violated it. But what matters here is that the Tribes sued under IGRA and won.

After prevailing, the Tribes filed a motion in this court seeking over $1 million in attorneys' fees spent litigating the *Chicken Ranch I* appeal. The Tribes argue that we should order fees under California Code of Civil Procedure § 1021.5, which allows an award of fees to a prevailing party "in any action which has resulted in the enforcement of an important right affecting the public interest," if certain other conditions are met. We thus consider whether the Tribes are entitled to appellate attorneys' fees. *See* 9th Cir. R. 39-1.6; *Orn v. Astrue*, 511 F.3d 1217, 1218–19 (9th Cir. 2008) (per curiam).

## II

### A

California first argues that sovereign immunity bars the Tribes' request for a fee award. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). States generally enjoy sovereign immunity from suit, but a state "may choose to waive its immunity in federal court at its pleasure." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). It "may not be implied." *Id.* And when a court does find waiver, it is to be "strictly construed, in terms of its scope, in favor of the sovereign." *Id.* at 285 (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)).

Even against this demanding standard, we already recognized that California consented to suit in this case. As we noted in our earlier opinion, through California Government Code § 98005, "California has expressly consented to federal suits brought by California tribes under IGRA." *Chicken Ranch I*, 42 F.4th at 1032 n.1 (citing *In re*

*Indian Gaming Related Cases* (*Coyote Valley II*), 331 F.3d 1094, 1101 & n.9 (9th Cir. 2003)). California explicitly consented "to the jurisdiction of the courts of the United States in any action brought against the state by any federally recognized California Indian tribe asserting any cause of action arising from the state's refusal to enter into negotiations . . . pursuant to IGRA or to conduct those negotiations in good faith." Cal. Gov't Code § 98005.

California responds that, although it consented to the Tribes' underlying IGRA action, it did not submit to federal court adjudication of an attendant attorneys' fee motion. California does not suggest that, had IGRA contained a fee-shifting provision, the waiver of sovereign immunity in § 98005 would not encompass such relief. Instead, California maintains that attorneys' fees are just not available through an IGRA action. That contention, however, merely collapses California's sovereign immunity defense into its merits argument that IGRA's lack of a fee-shifting provision is dispositive. *Cf. Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1032 (9th Cir. 2013) (per curiam) (addressing analogous situation in which sovereign immunity "merged with the question on the merits") (quotations and alterations omitted). The key question, to which we now turn, is whether the Tribes may obtain attorneys' fees in this IGRA case.

B

We have long held that "[i]n a pure federal question case brought in federal court, federal law governs attorney fees." *Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 940 (9th Cir. 2009) (citing *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000)). And under federal law, which follows the so-called "American

Rule," "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257 (1975); *see also Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 370–71 (2019); *Baker Botts L.L.P. v. ASARCO L.L.C.*, 576 U.S. 121, 126 (2015). IGRA is, of course, a federal statute. In *Chicken Ranch I*, our jurisdiction was thus based on a federal question. 25 U.S.C. § 2710(d)(7)(A)(i); 28 U.S.C. § 1331. And IGRA contains no provision for attorneys' fees.

We have held, to be sure, that "[a] federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) ("[S]tate law on attorney's fees is substantive, so state law applies in diversity cases."). That result flows from basic *Erie* principles. *See, e.g.*, *Alyeska Pipeline Serv. Co.*, 421 U.S. at 259 n.31; *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018). State law governing attorneys' fees can also apply to state law claims over which federal courts exercise supplemental jurisdiction. *See MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999); *Cotton v. Slone*, 4 F.3d 176, 180–81 (2d Cir. 1993).

But in *Chicken Ranch I*, we were not sitting in diversity jurisdiction. Indeed, there was no state law claim in the case at all. Resolution of the Tribes' request for attorneys' fees should thus be open and shut: this was a purely federal question case, and the Tribes point to no provision of IGRA or any other federal law authorizing attorneys' fees in an IGRA action. Congress did not opt out of the default American Rule, and so the Tribes' fee motion fails.

The Tribes creatively argue otherwise. They acknowledge the established law that we have just set forth. But they maintain there is an exception authorizing attorneys' fees in federal question cases when the claims implicate, in the Tribes' words, "substantial and significant issues of state law." Even though the Tribes did not allege a violation of state law in their complaint, they assert that state law was implicated in *Chicken Ranch I*. The Tribes point out, for instance, that state law in a sense enabled this controversy, because it was state law that allowed California's Governor to engage in tribal-state compact negotiations, *see* Cal. Const. art. IV, § 19(f); Cal. Gov't Code § 12012.25(d), and state law that waived California's sovereign immunity in IGRA actions, Cal. Gov't Code § 98005. The Tribes further argue that California's violation of IGRA's good-faith negotiation duty "necessarily" led California to violate state law as well, because the state's authority to negotiate in this area is premised on its compliance with IGRA.

The Tribes thus claim that this is the "highly unusual" case in which state law should govern a request for attorneys' fees in a federal question case because state law was supposedly "central and essential" to our disposition of the underlying appeal. The Tribes assert, in particular, that our decision in *Independent Living Center of Southern California, Inc. v. Kent*, 909 F.3d 272 (9th Cir. 2018), supports this approach for a fee award. As we now explain, it does not.

*Kent* took a long and winding procedural course, and we will limit ourselves to recounting only the most pertinent details. *See id.* at 275 (describing a "decade-long journey within the federal court system"). The federal Medicaid Act "authorizes the federal government to distribute funds to

states for the purpose of providing medical assistance to low-income persons," and it requires that states set sufficient provider reimbursement rates so that medical care will be available to the general population. *Id.* at 276. The California legislature enacted a statute reducing reimbursement rates by ten percent. *Id.* A group of health care providers then petitioned for a writ of mandamus in state court under California Code of Civil Procedure § 1085, a state law writ mechanism, arguing that the reimbursement reduction conflicted with the federal Medicaid Act and was preempted under the Supremacy Clause. *Id.*

The defendants, the California Department of Health Care Services and its director, removed the action to federal court based on federal question jurisdiction. *Id.* Initially, federal question jurisdiction was ostensibly premised on the theory that the plaintiffs' "cause of action . . . constitute[d] a suit pursuant to the Supremacy Clause to enjoin state legislation allegedly preempted by a federal statute (here, the Medicaid Act)." *Id.* at 278; *see also Indep. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1050, 1057–58 (9th Cir. 2008); *Indep. Living Ctr. of S. Cal. v. Shewry*, 543 F.3d 1047, 1048–49 (9th Cir. 2008) (per curiam). The Supreme Court then granted certiorari in the case to decide whether the plaintiffs could sue under the Supremacy Clause to enforce the Medicaid law. But the Court ended up not reaching the issue and remanded for our further consideration. *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 616 (2012). Following *Douglas*, the parties settled. The plaintiffs then moved for attorneys' fees under California Code of Civil Procedure § 1021.5, the same provision the Tribes invoke here.

Our decision in *Kent* addressed the attorneys' fees issue. By that time, however, the Supreme Court had held in

*Armstrong v. Exceptional Child Care Center, Inc.*, 575 U.S. 320 (2015), that "the Supremacy Clause is not the source of any federal rights" and "certainly does not create a cause of action." *Id.* at 324–25 (quotations omitted). In *Kent*, we nonetheless clarified that although there was no federal cause of action in the case, there was still federal question jurisdiction because the case fell within the "special and small category of cases," *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotations omitted), in which "[f]ederal jurisdiction over state-law claims will lie if a federal issue is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress.'" *Kent*, 909 F.3d at 279 (quoting *Gunn*, 568 U.S. at 258).

Even though we had federal question jurisdiction, we were clear that whether California law governed the request for attorneys' fees depended on whether the plaintiffs had brought a state or federal law *claim*. As we stated: "The central question in this appeal is whether Appellants brought a *state-law claim* or a *federal claim*, for the answer to that question will determine whether they are entitled to seek attorneys' fees pursuant to California's § 1021.5 in federal court." *Id.* at 278. We then held that because "Appellants brought a state-law claim, . . . they are therefore permitted to seek fees pursuant to § 1021.5." *Id.*

*Kent* did not suggest that the prevalence of a state law backdrop could somehow justify applying a state law attorneys' fees provision to a purely federal claim. It did not create some kind of "exception" to the usual rules, as the Tribes maintain. *Kent* itself reiterated that "in a 'pure federal question case' in federal court, federal law governs attorneys' fees." *Id.* at 281 (quoting *Disability Law Ctr.*, 581 F.3d at 940). *Kent* was an unusual case because we had

federal question jurisdiction but no federal cause of action. *See id.* at 279. But at bottom, *Kent* was simply an application (on somewhat knotty facts) of the usual rule that state law governing attorneys' fees generally applies to state law claims.

For that reason, the thrust of our analysis in *Kent* was in service of proving up that the plaintiffs in that case had, in fact, pursued an actionable state law claim—a point of some complexity in the case. We explained that following *Armstrong*, in which the Supreme Court had rejected an implied cause of action under the Supremacy Clause, "Appellants' cause of action must be grounded in state law, if a cause of action is to exist under the circumstances alleged." *Id.* at 280; *see also id.* at 281 ("[A]s *Armstrong* elucidated, there was simply no federal right of action to be had."). We then concluded, based on an extensive review of how California writ actions could be employed, that the plaintiffs' California writ action that precipitated the case "endured as a state-law claim." *Id.* at 280. Because the plaintiffs had prevailed on "a state-law cause of action, we look[ed] to California law to determine whether attorneys' fees [were] available." *Id.* at 283. Under *Kent*'s claim-based framework, California law does not apply to the Tribes' request for attorneys' fees because the Tribes brought and prevailed on a federal claim only.

The Tribes flag that in *Kent*, we at one point noted that "a significant portion of Appellants' success was due to our interpretation of state law." *Id.* at 281. From this, the Tribes would have us apply state law on attorneys' fees even when there is only a federal claim in the case, if, as the Tribes put it, there is a sufficient "entanglement between the state and federal law issues that arose in the litigation." As a descriptive matter, the Tribes' comparison to *Kent* is inapt

because the Tribes' success in *Chicken Ranch I* was based predominately on our interpretation of federal, not state law. But more importantly, the Tribes again misunderstand *Kent*.

Consistent with the rest of our analysis in the case, the passage in *Kent* on which the Tribes rely was merely part of our explanation for why the *Kent* plaintiffs' suit was properly characterized as advancing a state law claim. We did not suggest that, in deciding which law applies to an attorneys' fees motion in a purely federal question case, we should conduct an indeterminate analysis into how much state law was at play in the litigation. That would conflict with *Kent*'s core premise that whether state law applies to an attorneys' fees motion turns on whether the plaintiffs "brought a *state-law claim* or a *federal claim*." *Id.* at 278. The Tribes' preferred approach would also be quite difficult to administer, especially in cases brought against state actors, in which state law issues will inevitably be part of the story.

The upshot of *Kent* is that, in determining whether state law applies to an attorneys' fees motion, the presence of federal law issues in the litigation does not somehow transform a state law claim into a federal one. Likewise here, the Tribes' IGRA claim did not lose its character as a federal claim simply because state law issues were lurking in the case or because state law in some sense set the stage for the violation of federal law that was the basis of the action. It is the nature of the claim on which a party prevails, *Kent* makes clear, that "will determine" whether state or federal law applies to any ensuing request for attorneys' fees. *Id.*

Our decision in *Klein v. City of Laguna Beach*, 810 F.3d 693 (9th Cir. 2016), only reinforces our conclusion. The plaintiff in that case alleged that a city noise ordinance

violated both California law and the federal Constitution. *Id.* at 696–97. The plaintiff prevailed on his federal constitutional claim, did not prevail on his state law claims, and then, as relevant here, sought attorneys' fees under California Code of Civil Procedure § 1021.5. *Id.* at 698, 701.

We held that California law did not apply to the fee motion. Because the plaintiff "was only a prevailing party on his federal claims," we said that federal law, "and not state law, is the relevant authority." *Id.* at 702 (quoting *Modzelewski v. Resol. Tr. Corp.*, 14 F.3d 1374, 1379 (9th Cir. 1994)) (alteration omitted). *Klein*, like *Kent*, confirms that it is the nature of the claim on which a party prevailed (federal or state) that determines the law that applies (federal or state) to any request for attorneys' fees.

Because the Tribes brought a claim only under IGRA, California law does not govern their request for fees. And because federal law does not provide for fee shifting here, the Tribes' motion for attorneys' fees must be

**DENIED.**